1    ADAM E. POLK (SBN 273000)
     apolk@girardsharp.com
2    **GIRARD SHARP LLP**
     601 California Street, Suite 1400
3    San Francisco, CA 94108
     Telephone: (415) 981-4800
4    Facsimile: (415) 981-4846

5    DAVID W. HALL (SBN 274921)
     dhall@hallfirmltd.com
6    **THE HALL FIRM, LTD.**
     Four Embarcadero Center, Suite 1400
7    San Francisco, CA  94104
     Telephone: (415) 766-3534
8    Facsimile: (415) 402-0058

9    *Attorneys for Plaintiff and the Putative*
     *Class*

10

11

12              UNITED STATES DISTRICT COURT

13            SOUTHERN DISTRICT OF CALIFORNIA

14

15   TOMMY O'HARA, Individually and on )   Case No. **'24CV1593 LL    SBC**
     Behalf of All Others Similarly Situated, )
16                                          )   CLASS ACTION
                              Plaintiff,    )
17                                          )   COMPLAINT FOR VIOLATIONS OF
              vs.                           )   THE SECURITIES ACT OF 1933
18                                          )
     ORTHOFIX MEDICAL INC., JON C.          )
19   SERBOUSEK, DOUGLAS C. RICE,            )   DEMAND FOR JURY TRIAL
     CATHERINE M. BURZIK, WAYNE             )
20   BURRIS, JASON M. HANNON,               )
     JAMES F. HINRICHS, LILLY               )
21   MARKS, MICHAEL E. PAOLUCCI,            )
     JOHN E. SICARD, THOMAS A.              )
22   WEST, KEITH C. VALENTINE,              )
     KIMBERLEY A. ELTING, and               )
23   PATRICK L. KERAN,                      )
                                            )
24                            Defendants.   )
                                            )
25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

## I.     **INTRODUCTION**

1.     Plaintiff, individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Orthofix Medical Inc. ("Orthofix" or the "Company"), and former SeaSpine Holdings Corporation ("SeaSpine"), as well as media and analyst reports about the Company and Company press releases.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## II.     **SUMMARY OF THE ACTION**

2.     This is a securities class action on behalf of former SeaSpine shareholders who acquired newly issued Orthofix common stock pursuant to the S-4 registration statement (inclusive of amendments thereto and documents incorporated therein, the "Registration Statement"), the related 424B3 prospectus (inclusive of amendments thereto, related prospectuses, and documents incorporated therein, the "Prospectus"), and related oral communications (collectively, the "Offering Materials") issued in connection with the January 2023 stock-for-stock transaction by which Orthofix acquired and merged with SeaSpine (the "Merger").

3.     Plaintiff asserts exclusively non-fraud claims sounding in negligence and strict liability under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("1933 Act" or "Securities Act") against Orthofix and certain current and former officers and directors of Orthofix and SeaSpine.

4.     In January 2023, in connection with the Merger, Orthofix solicited and sold approximately 16.6 million new shares of Orthofix common stock directly to former shareholders of SeaSpine as follows:  Each former share of SeaSpine common stock was exchanged for 0.4163 shares of newly issued Orthofix common stock (and,

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

if applicable, cash in lieu of fractional shares).  All of these new shares of Orthofix common stock were solicited and sold pursuant to the Offering Materials and related oral communications.

5.    The Offering Materials and related oral communications contained untrue statements of material fact and omitted material facts both required by governing regulations and necessary to make the statements made not misleading. Foremost, Defendants made a series of representations touting Orthofix's purportedly robust and effective disclosure controls and procedures and internal controls over financial reporting and ethical compliance.  In truth, contrary to Defendants' claims, at the time of the Merger, Orthofix lacked adequate internal controls and its purported compliance and training programs and protocols were grossly deficient, all of which resulted in: lax vetting of incoming executive hires; senior management and directors engaging in rampant harassment and other inappropriate misconduct in violation of the Company's purported ethical and professional standards; prioritization of personal and financial incentives over ensuring that Orthofix and its management complied with applicable laws, regulations, and contracts; and the Company's failure to ensure that its SEC filings and public disclosures were free of material misstatements.

6.    Defendants were required to disclose this material information in the Registration Statement for at least three independent reasons.  First, SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"), required disclosure of any known events or uncertainties that had caused or were reasonably likely to cause Orthofix's disclosed financial information not to be indicative of future operating results.  Defendants' undisclosed misconduct was already likely to (and in fact did) materially and adversely affect Orthofix's future results and prospects.

7.    Second, SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required, in the "Risk Factors" section of the Offering Materials, a discussion of the most significant factors that make the offering risky or speculative and that each risk factor adequately describes the risk.  Orthofix's discussions of risk factors did not even

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

mention, much less adequately describe the risk posed by, Defendants' undisclosed misconduct, nor the likely and consequent material adverse effects on the Company's future results and prospects.

8.    Third, Defendants' undisclosed misconduct rendered false and misleading the Registration Statement's many references to known risks that "*if*" occurring "*may*" or "*could*" affect the Company.    These "risks" were already materializing at the time of the Merger.

9.    With these misrepresentations and omissions in the Offering Materials and related oral communications, Defendants were able to complete the Merger. But as the truth of Defendants' misrepresentations and omissions gradually and partially emerged, the price of Orthofix shares suffered sharp declines.

10.    For example, on September 12, 2023, Defendants announced the appointment of an interim CEO, interim CFO, and interim CLO, effective immediately, following the "unanimous decision by the Board's independent directors to terminate for cause Keith Valentine, John Bostjancic and Patrick Keran from those respective roles." According to the press release issued that day:

> Orthofix Medical Inc. (NASDAQ: OFIX), a leading global spine and orthopedics company, today announced that Catherine Burzik, Chair of the Orthofix Board of Directors, has been appointed Interim Chief Executive Officer; Geoffrey Gillespie, Orthofix Vice President, Corporate Controller, has been appointed Interim Chief Financial Officer; and Puja Leekha, Orthofix Senior Vice President, Chief Ethics and Compliance Officer, has been appointed Interim Chief Legal Officer. ***The appointments are effective immediately and follow the unanimous decision by the Board's independent directors to terminate for cause Keith Valentine, John Bostjancic and Patrick Keran from those respective roles. The Board also requested that Mr. Valentine resign from the Board.*** The Board will immediately begin a search for permanent successors.
>
> ***The Board's decision follows an investigation conducted by independent outside legal counsel and directed and overseen by the Company's independent directors. As a result of the investigation, the***

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Board determined that each of these executives engaged in repeated inappropriate and offensive conduct that violated multiple code of conduct requirements and was inconsistent with the Company's values and culture.* These matters are unrelated to and do not impact the Company's strategy, results of operations or previously filed financial statements.

Catherine Burzik, Chair of the Orthofix Board, said, "*Orthofix's core values are built around fostering, cultivating and preserving a culture that is respectful, and we do not condone harassing or inappropriate conduct or statements of any kind. We require all employees - and especially our leaders - to behave in accordance with the Company's values. The Board did not make these decisions lightly. We believe they are necessary to ensure our employees, investors, customers, and other stakeholders have confidence in the Company's leaders.*"

11.    On this news, the price of Orthofix shares plummeted over 30% on heavy volume to a close of $13.01 per share on September 13, 2023.

12.    Then, on March 5, 2024, with the filing of its Annual Report on Form 10-K with the SEC, Orthofix admitted as follows:

In connection with the preparation and filing of this Annual Report, the Company's management, including our President and Chief Executive Officer and our Chief Financial Officer, conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2023, based on the framework set forth in "Internal Control—Integrated Framework (2013)" issued by the Committee of Sponsoring Organizations of the Treadway Commission (the COSO criteria). Based on its evaluation, the Company's management *concluded that our internal control over financial reporting was not effective* as of December 31, 2023, *due to a material weakness in the design and operation of certain management review controls pertaining to business combinations* and assessing recoverability of goodwill, resulting from *insufficient evidence supporting the precision over the determination of certain estimates* and *insufficient evidence supporting the operating effectiveness of the associated review controls*. . . .

As permitted by the SEC Staff interpretive guidance for recently acquired businesses, management's assessment and conclusion on the effectiveness of the Company's disclosure controls and procedures as of

- 4 -

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

December 31, 2023, ***excludes an assessment of the internal control over financial reporting of the SeaSpine business*** acquired on January 5, 2023. SeaSpine represents approximately 52% of consolidated total assets and approximately 35% of consolidated revenues as of and for the year ended December 31, 2023.

13.     Orthofix also disclosed that "Ernst & Young LLP, an independent registered public accounting firm, ha[d] issued an audit report on the effectiveness of our internal control over financial reporting as of December 31, 2023," which report stated as follows:

> We have audited Orthofix Medical Inc.'s internal control over financial reporting as of December 31, 2023, based on criteria established in Internal Control—Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework) (the COSO criteria). In our opinion, because of the effect of the material weakness described below on the achievement of the objectives of the control criteria, ***Orthofix Medical Inc. (the Company) has not maintained effective internal control over financial reporting as of December 31, 2023, based on the COSO criteria.***

14.     By the commencement of this action, Orthofix shares have traded below $10 per share, an ***over 50% decline*** from the amount paid per share in the Merger exchange.  Plaintiff and similarly situated former SeaSpine investors suffered severe losses as a result.

## III.    JURISDICTION AND VENUE

15.     This Court has original subject matter jurisdiction as the claims alleged arise under the federal Securities Act.

16.     This Court has personal jurisdiction and venue is proper in this county because certain Defendants are headquartered or otherwise reside within California and this county, Defendants drafted the Offering Materials in part in this county, Defendants and their agents affirmatively solicited the subject securities and Offering Materials and disseminated the alleged false and misleading statements and omissions

- 5 -

1   to investors in California and this county, and those contacts with California are
2   substantially connected to the claims asserted in this complaint.

3   **IV.    PARTIES**

4       17.    Plaintiff Tommy O'Hara is a former SeaSpine shareholder who was
5   directly solicited to acquire, and did acquire, newly issued Orthofix shares directly in
6   the Merger in exchange for SeaSpine shares pursuant to the Offering Materials and
7   related oral communications and was damaged thereby.

8       18.    Defendant Orthofix is incorporated under the laws of Delaware. The
9   Company's common stock trades in an efficient market on the Nasdaq Global Select
10  Market ("NASDAQ") under the ticker symbol "OFIX." Defendant Orthofix describes
11  itself as a leading global spine and orthopedics company with a comprehensive
12  portfolio of biologics, innovative spinal hardware, bone growth therapies, specialized
13  orthopedic solutions, and a leading surgical navigation system. Orthofix's headquarters
14  are in Lewisville, Texas and its primary offices are in Carlsbad, California.  By means
15  of the Merger, Orthofix merged with and acquired SeaSpine, which at the time was an
16  independent company headquartered in Carlsbad, California and trading on the
17  NASDAQ under the ticker symbol "SPNE." On January 5, 2023, in connection with
18  the Merger, Orthofix issued approximately 16 million new shares of Orthofix common
19  stock directly to Plaintiff and other former shareholders of SeaSpine as follows:  Each
20  former share of SeaSpine common stock was exchanged for 0.4163 shares of newly
21  issued Orthofix common stock (and, if applicable, cash in lieu of fractional shares).
22  All of these new shares of Orthofix common stock were solicited and sold pursuant to
23  the Offering Materials and related oral communications.

24      19.    Defendant Jon C. Serbousek served, at the time of the Merger, as the
25  Company's Executive Chairman of the Board.  He was formerly Orthofix's President
26  and Chief Executive Officer.  He reviewed, contributed to, participated in the drafting
27  and solicitation of, and signed the Offering Materials.

28

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

20.    Douglas C. Rice provided, at the time of the Merger, assistance with integration activities.   He was formerly the Company's Chief Financial Officer (principal financial and accounting officer). He reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

21.    Catherine M. Burzik served, at the time of the Merger, as Orthofix's Chair of the Board of Directors, a position she held since 2021. She was named Lead Independent Director of Orthofix's Board. She reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

22.    Wayne Burris served, at the time of the Merger, as a member of Orthofix's Board and on its Audit and Finance Committee from September 2021 to the closing of the merger. He also served on Orthofix's Compensation and Talent Committee from June 2022 until January 2023. He reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

23.    Jason M. Hannon served, at the time of the Merger, as a director on Orthofix's Board. He reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

24.    James F. Hinrichs served, at the time of the Merger, as a director on Orthofix's Board. He reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

25.    Lilly Marks served, at the time of the Merger, as a director on Orthofix's Board. She reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

26.    Michael E. Paolucci served, at the time of the Merger, as a director on Orthofix's Board, and also served on the Compensation and Talent Development Committee. He reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

27.    John E. Sicard served, at the time of the Merger, as a director on Orthofix's Board. He reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

28.    Thomas A. West served, at the time of the Merger, as a director on Orthofix's Board, and also served on the Compensation and Talent Development Committee. He reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

29.    Keith C. Valentine served, at the time of the Merger, as the Company's President and Chief Executive Officer and as a member of its Board. He was formerly SeaSpine's President, Chief Executive Officer and a member of its Board. He reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

30.    Kimberley A. Elting served, at the time of the Merger, as the Company's Chief Legal and Development Officer where she assumed leadership responsibilities for Business Development and oversaw Orthofix's Legal, Business Development, and Corporate Communications teams. In April 2022, Ms. Elting also became the Company's President of Global Orthopedics. She reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

31.    Patrick L. Keran served, at the time of the Merger, as Orthofix's Chief Legal Officer. He was formerly SeaSpine's Senior Vice President, General Counsel and Secretary. He reviewed, contributed to, participated in the drafting and solicitation of, and signed the Offering Materials.

32.    The defendants named in ¶¶19-31 are referred to herein as the "Individual Defendants." The Individual Defendants and Orthofix are collectively referred to as "Defendants." The Individual Defendants each signed and were identified as officers or directors or incoming directors in the Registration Statement, solicited the purchase of securities issued pursuant thereto, planned and contributed to the Merger and Registration Statement, and attended promotions to meet with and present favorable

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1  information to Orthofix and SeaSpine investors, all motivated by their own and the

2  Company's financial interests.

3  **V.    FALSE AND MISLEADING OFFERING MATERIALS AND
         RELATED ORAL COMMUNICATIONS**

4

5       33.    On October 11, 2022, Orthofix announced that it was merging with

   SeaSpine.[1] On the same date, Orthofix filed with the SEC numerous documents

6
   announcing the merger such as the transcript of the joint October 11, 2022 Merger
7
   Announcement call hosted by Orthofix and SeaSpine as well as graphics touting the
8
   "Talented, Proven Leadership" of Defendant Valentine on Form 425 prospectus, under
9
   Securities Act Rule 425 for certain prospectuses and communications in connection
10
   with business combinations.[2]
11

12      34.    On November 8, 2022, Defendants filed with the SEC on Form S-4 a

13  draft Registration Statement which would register the Orthofix shares to be issued and

   exchanged in the Merger following amendments in response to SEC comments,
14
   including comments from the SEC emphasizing Defendants' responsibility for the
15
   accuracy and adequacy of their disclosures, notwithstanding any review, comments,
16
   action or absence of action by the SEC.[3]
17

18

19

20  [1]
    https://www.sec.gov/ix?doc=/Archives/edgar/data/884624/000119312522260149/d34
21  5457d8k.htm

22  [2]
    https://www.sec.gov/Archives/edgar/data/884624/000119312522260727/d412130d42
23  5.htm;
    https://www.sec.gov/Archives/edgar/data/884624/000119312522260866/d368852d42
24  5.htm;
    https://www.sec.gov/Archives/edgar/data/884624/000119312522260721/d410116d42
25  5.htm

26  [3]
    https://www.sec.gov/Archives/edgar/data/884624/000119312522279689/d345453ds4
27  .htm;
    https://www.sec.gov/Archives/edgar/data/884624/000000000022012361/filename1.p
28  df

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

35.     On November 22, 2022, Defendants filed with the SEC an amendment to the Registration Statement.[4]

36.     On November 22, 2022, the SEC declared the Registration Statement effective.[5]

37.     On November 23, 2022, Defendants filed a prospectus on Form 424B3 for the Orthofix shares ultimately issued and exchanged in the Merger, which prospectus forms part of the Registration Statement.[6]  Beginning on November 23, 2022, Defendants began mailing the Offering Materials to stockholders of Orthofix and stockholders of SeaSpine.

38.     On January 5, 2023, Defendants completed the Merger, selling over 16 million shares of Orthofix common stock directly to former SeaSpine common stockholders in exchange for their SeaSpine common shares (excluding shares of Orthofix common stock underlying the equity awards and stock options assumed by Orthofix as a result of the Merger).[7]

39.     As detailed below, Defendants conducted the Merger despite the Offering Materials and related oral communications containing untrue statements of material fact and omissions of material fact both required by governing regulations and necessary to make the statements made not misleading.

---

[4] https://www.sec.gov/Archives/edgar/data/884624/000119312522290915/d345453ds4a.htm

[5] https://www.sec.gov/Archives/edgar/data/884624/999999999522003378/xslEFFECTX01/primary_doc.xml

[6] https://www.sec.gov/Archives/edgar/data/884624/000119312522291314/d345453d424b3.htm

[7] https://www.sec.gov/ix?doc=/Archives/edgar/data/884624/000119312523001900/d433449d8k.htm

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

**A.    The Offering Materials Misrepresented and Omitted Material Facts Regarding Orthofix's Deficient Internal Controls**

40.    The Committee of Sponsoring Organizations of the Treadway Commission ("COSO")—an organization that provides guidance to executive management and governance entities on issues of corporate governance and internal controls—defines "internal controls" in Chapter 1 of its Framework as follows:

> Internal control is a process, effected by an entity's board of directors, management and other personnel, designed to provide reasonable assurance regarding the achievement of objectives in the following categories: (i) Effectiveness and efficiency of operations; (ii) Reliability of financial reporting; (iii) Compliance with applicable laws and regulations.

41.    Moreover, COSO emphasizes the importance of a strong control environment, which sets a positive "tone at the top" and then flows down through the Company. The COSO Framework Executive Summary identifies the pervasive influence that the control environment has on the Company, as follows:

> The control environment sets the tone of an organization, influencing the control consciousness of its people. It is the foundation for all other components of internal control, providing discipline and structure. Control environment factors include the integrity, ethical values and competence of the entity's people; management's philosophy and operating style; the way management assigns authority and responsibility, and organizes and develops its people; and the attention and direction provided by the board of directors.

42.    In addition, the COSO Framework, Ch. 2, establishes that management's philosophy and operating style directly affects the manner in which the company is managed, the amount of risk that the company accepts and ultimately the success of the company. Chapter 2 of the COSO Framework states:

> Management's philosophy and operating style affect the way the enterprise is managed, including the kinds of business risks accepted. . . . Other elements of management's philosophy and operating style include attitudes toward financial reporting, conservative or aggressive selection from available alternative accounting principles, conscientiousness and conservatism with which accounting estimates are developed, and attitudes toward data processing and accounting functions and personnel. . . . The impact of an ineffective control environment could be far reaching, possibly resulting in a financial loss, a tarnished public image or a business failure.

- 11 -

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

43.    Section 404 of the Sarbanes-Oxley Act of 2002 ("the Sarbanes-Oxley Act") requires management to assess the effectiveness of the internal control structure and the financial reporting for procedures. Management is responsible for performing this assessment in the context of a top-down risk assessment, which requires management to base both the scope of its assessment and the evidence gathered on risk. Management's conclusion of its assessment of the effectiveness of the Company's internal control must be included in the Company's annual report. Moreover, it was crucial for Orthofix to regularly monitor those controls to verify their operating effectiveness.

44.    SEC rules require management to report publicly all material weaknesses in the Company's internal controls.

45.    Defendants Serbousek and Rice were required under Rule 302 of the Sarbanes-Oxley Act to provide assurances relating to the Company's "internal control over financial reporting." Rule 302 states as follows:

> [E]ach annual report . . . [should] contain an internal control report, which shall: (1) state the responsibility of management for establishing and maintaining an adequate internal control structure and procedures for financial reporting; and (2) contain an assessment, as of the end of the most recent fiscal year of the issuer, of the effectiveness of the internal control structure and procedures of the issuer for financial reporting.

46.    In the Offering Materials, and materials incorporated therein, Defendants made a series of representations concerning Orthofix's purported disclosure controls and procedures and internal controls over financial reporting.

47.    For example, the Offering Materials, which incorporated the Merger Agreement by reference, stated that Orthofix maintained internal controls over financial reporting:

> Orthofix maintains a system of "internal control over financial reporting" (as defined in Rules 13a-15(f) and 15d-15(f) of the Exchange Act) sufficient to provide reasonable assurance (i) that transactions are recorded as necessary to permit preparation of financial statements in conformity with GAAP, consistently applied, (ii) that transactions are executed only in accordance with the authorization of management and (iii) regarding prevention or timely detection of the unauthorized acquisition, use or disposition of Orthofix's properties or assets. Since

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

January 1, 2020, none of Orthofix, Orthofix's independent accountants, the Orthofix Board or its audit committee has received any oral or written notification of any (A) "significant deficiency" in the internal controls over financial reporting of Orthofix, (B) "material weakness" in the internal controls over financial reporting of Orthofix, or (C) fraud, whether or not material, that involves management or other employees of Orthofix or its Subsidiaries who have a significant role in the internal controls over financial reporting of Orthofix. Since January 1, 2020, any material change in internal control over financial reporting required to be disclosed in any Orthofix SEC Document has been so disclosed.

48.    The Offering Materials, and materials incorporated therein, further stated that:

The "disclosure controls and procedures" (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) utilized by Orthofix are reasonably designed to ensure that all information (both financial and non-financial) required to be disclosed by Orthofix in the reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the rules and forms of the SEC and that all such information required to be disclosed is accumulated and communicated to the management of Orthofix, as appropriate, to allow timely decisions regarding required disclosure and to enable the chief executive officer and chief financial officer of Orthofix to make the certifications required under the Exchange Act with respect to such reports.

49.    The Offering Materials, and materials incorporated therein, recognized the importance of effective internal controls and stated that Orthofix's business "could" be harmed "if" the Company failed to maintain effective internal controls:

*If we fail to maintain an effective system of internal controls or discover material weaknesses in our internal control over financial reporting, we may not be able to report our financial results accurately or detect fraud, which could harm our business and the trading price of our common stock.*

Effective internal controls are necessary for us to produce reliable financial reports and are important in our effort to prevent financial fraud. We are required to periodically evaluate the effectiveness of the design and operation of our internal controls. As has occurred in several years prior, these evaluations may result in the conclusion that enhancements, modifications, or changes to our internal controls are necessary or desirable. While management evaluates the effectiveness of our internal controls on a regular basis, these controls may not always be effective. There are inherent limitations on the effectiveness of internal controls, including collusion, management override, and failure of human judgment. Because of this, control procedures are designed to reduce rather than eliminate business risks. If we fail to maintain an effective system of internal controls or if management or our independent registered public accounting firm were to discover material weaknesses in our internal controls, we may be unable to produce reliable financial

- 13 -

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

reports or prevent fraud, which could harm our financial condition and operating results, and could result in a loss of investor confidence and a decline in our stock price.

50.    The Offering Materials, and the materials incorporated therein, represented that Orthofix's management, including Defendants Serbousek and Rice, evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures and determined the Company's disclosure controls and procedures were effective.[8]

51.    The Offering Materials, including the 2021 Form 10-K incorporated therein, represented that:

**Management's Report on Internal Control over Financial Reporting**

The Company's management is responsible for establishing and maintaining adequate internal control over financial reporting (as such term is defined in the Exchange Act Rule 13a-15(f)). The Company's internal control over financial reporting includes those policies and procedures that (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. GAAP, and that receipts and expenditures of the Company are being made only in accordance with authorizations of management and directors of the Company; and (iii) provide reasonable assurance regarding the prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the financial statements.

Internal control over financial reporting is designed to provide reasonable assurance to the Company's management and board of directors regarding the preparation of reliable financial statements for external purposes in accordance with U.S. GAAP. Because of the inherent limitations in any internal control, no matter how well designed, misstatements may occur and not be prevented or detected. Accordingly, even effective internal control over financial reporting can provide only reasonable assurance with respect to financial statement preparation. Further, the evaluation of the effectiveness of internal control over financial reporting was made as of a specific date, and continued effectiveness in future periods is subject to the risks that controls may become inadequate because of changes in conditions or that the degree of compliance with the policies and procedures may decline.

---

[8] https://www.sec.gov/ix?doc=/Archives/edgar/data/884624/000156459022006929/ofix-10k_20211231.htm

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1
2
3
4
5

In connection with the preparation and filing of this Annual Report, the Company's management, including our President and Chief Executive Officer and our Chief Financial Officer, conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2021, based on the framework set forth in "Internal Control—Integrated Framework (2013)" issued by the Committee of Sponsoring Organizations of the Treadway Commission (the COSO criteria). Based on its evaluation, the Company's management concluded that, as of December 31, 2021, the Company's internal control over financial reporting is effective based on the specified criteria.

6
7
8
9
10

52.    The Offering Materials also stated that there had not been changes in internal control over financial reporting that had materially affected or were reasonably likely to materially affect, Orthofix's internal control over financial reporting, including in Orthofix's 2021 Form 10-K.  Similarly, Orthofix's quarterly Form 10-Q's during 2022 stated:

11
12
13

There was no change in our internal control over financial reporting, known to the President and Chief Executive Officer or the Chief Financial Officer that occurred for the quarterly period covered by this report that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.[9]

14
15
16
17
18
19
20
21
22
23

53.    In the Offering Materials, and materials incorporated therein, Defendants Serbousek and Rice further certified under Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") that the Annual and Quarterly Reports were accurate and complete, and that they had established appropriate internal controls, stating that they: (i) were responsible for establishing and maintaining internal control over financial reporting, and (ii) had designed such internal controls over financial reporting to provide reasonable assurance regarding the reliability of Orthofix's financial reporting and the preparation of Orthofix's financial statements ahead of the Merger. Furthermore, Defendants Serbousek and Rice represented that: (i) they had

24
25
26
27
28

---

[9]                                    *See,*                                                *e.g.*,
https://www.sec.gov/ix?doc=/Archives/edgar/data/884624/000095017022007997/ofix-20220331.htm;
https://www.sec.gov/ix?doc=/Archives/edgar/data/884624/000095017022014951/ofix-20220630.htm;
https://www.sec.gov/ix?doc=/Archives/edgar/data/884624/000095017022021538/ofix-20220930.htm

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

reviewed Orthofix's filings; (ii) the filings did not contain any "untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading"; (iii) Orthofix's financial statements "fairly present[ed] in all material respects the financial condition, results of operations and cash flows" of Orthofix; and (iv) Orthofix's financial statements "fairly present[ed], in all material respects, the financial condition and results of operations of Orthofix," as required by 18 U.S.C. § 1350. Further, in each of the SOX Certifications, Defendants Serbousek and Rice further made positive representations to investors that they had: (i) evaluated the "effectiveness of [Orthofix]'s disclosure controls and procedures"; and (ii) designed "disclosure controls and procedures" to "ensure" that material information about Orthofix was made known to them. In connection with the Offering Materials, Defendants Serbousek and Rice executed the SOX Certifications on February 25, 2022, May 6, 2022,[10] August 5, 2022,[11] and on November 3, 2022.[12]

54.    In truth, contrary to Defendants' claims, Orthofix lacked adequate internal controls, compliance and training programs, which resulted in: lax vetting of incoming executive hires; senior management and directors engaging in rampant harassment and other inappropriate misconduct in violation of the Company's purported ethical and professional standards; prioritization of personal and financial incentives over ensuring that Orthofix and its management complied with applicable

---

[10] https://www.sec.gov/ix?doc=/Archives/edgar/data/884624/000095017022007997/ofix-20220331.htm

[11] https://www.sec.gov/ix?doc=/Archives/edgar/data/884624/000095017022014951/ofix-20220630.htm

[12] https://www.sec.gov/ix?doc=/Archives/edgar/data/884624/000095017022021538/ofix-20220930.htm

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

laws, regulations, and contracts; and the Company's failure to ensure that its SEC filings and public disclosures were free of material misstatements.

**B.    The Offering Materials Falsely and Misleadingly Represented Orthofix's Ethical Compliance Processes and Protocols**

55.    The Offering Materials, and materials incorporated therein, also misrepresented and omitted materials facts in regard to Orthofix's purported ethical compliance and related process and protocols.

56.    For example, the Offering Materials falsely represented that Orthofix complied with all employment laws and that there had been no allegations of misconduct against officers, directors, managers or other supervisory-level employees:

> Orthofix is in compliance in all material respects with all Laws relating to the employment of labor, including all such Laws relating to wages, hours, civil and/or human rights, harassment, discrimination and/or retaliation in employment, reasonable accommodation, unfair competition, affirmative action, pay equity, employment equity, workers' compensation, safety and health, worker classification (including employee-independent contractor classification and the proper classification of employees as exempt employees and non-exempt employees), WARN and any similar foreign, state, provincial or local "mass layoff" or "plant closing" Law. No Misconduct Allegation has been made at any time within the past four (4) years against any Person who is or was an officer, director, manager or supervisory-level employee of Orthofix in such person's capacity as such or, to the knowledge of Orthofix, in any other capacity, nor are any Misconduct Allegations pending or, to the knowledge of Orthofix, threatened, nor is there any reasonable basis for such a Misconduct Allegation. Within the past four (4) years, Orthofix has not entered into any settlement agreement, tolling agreement, non-disparagement agreement, confidentiality agreement or non-disclosure agreement, or any Contract or provision similar to any of the foregoing relating directly or indirectly to any Misconduct Allegation against Orthofix or any person who is or was an officer, director, manager, employee or independent contractor of Orthofix.[13]

57.    In truth, contrary to Defendants' claims, Orthofix was not in material compliance with all applicable laws related to employment, harassment, and ethical compliance. Orthofix lacked adequate internal controls, compliance and training

---

[13] https://www.sec.gov/Archives/edgar/data/884624/000119312522291314/d345453d42 4b3.htm

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

programs related to employment, harassment, and ethical compliance and vetting, which resulted in: lax vetting of incoming executive hires; senior management and directors engaging in rampant harassment and other inappropriate misconduct in violation of the Company's purported ethical and professional standards; prioritization of personal and financial incentives over ensuring that Orthofix and its management complied with applicable laws, regulations, and contracts; and the Company's failure to ensure that its SEC filings and public disclosures were free of material misstatements.

### C. Pure Omissions: Omitted Material Information Required Under Regulation S-K

58.    In addition to affirmative misrepresentations and omissions of material fact necessary to make certain affirmative statements not misleading, Defendants omitted information required to be stated in the Offering Materials pursuant to affirmative disclosure duties imposed by controlling SEC regulations, including Items 303 and 105 of Regulation S-K.

#### i. Offering Materials Omitted Information in Violation of Item 303

59.    Item 303 of SEC Regulation S-K requires that management's discussion and analysis ("MD&A") "[i]dentify any known trends or any known demands, commitments, events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any material way" and "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303.

60.    In addition to the identification of such "known trends or uncertainties," Item 303 further requires disclosure of (i) whether those trends have had or are reasonably expected to have a material unfavorable impact on revenue; and (ii) the extent of any such impact on revenue. Moreover, pursuant to SEC Regulation C, registrants have an overarching duty to disclose material information necessary to

ensure that representations in a registration statement are not misleading. Specifically, Rule 408 states that: "In addition to the information expressly required to be included in a registration statement, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading." 17 C.F.R. § 230.408(a).

61.    Accordingly, as the SEC has repeatedly emphasized, the "specific provisions in Item 303 [set forth above] require disclosure of forward-looking information." Indeed, the SEC has stated that Item 303 is "intended to give the investor an opportunity to look at the company through the eyes of management by providing both a short and long-term analysis of the business of the company . . . with particular emphasis on the registrant's prospects for the future." *See* Management's Discussion and Analysis of Financial Condition and Results of Operation, Securities Act Release No. 6835, 1989 WL 1092885, at *3 (May 18, 1989). Thus, "material forward looking information regarding known material trends and uncertainties is required to be disclosed as part of the required discussion of those matters and the analysis of their effects." *See* Commission Guidance Regarding Management's Discussion and Analysis of Financial Condition and Results of Operation, Securities Act Release No. 8350, 2003 WL 22996757, at *11 (December 29, 2003).

62.    In its May 1989 interpretive release on Item 303 ("1989 Interpretive Release"), the SEC emphasized that disclosure of even forward-looking information concerning the registrant (here, Orthofix) is required, explaining as follows:

> Required disclosure is based on ***currently known trends, events, and uncertainties that are reasonably expected to have material effects***, such as: A reduction in the registrant's product prices; erosion in the registrant's market share; changes in insurance coverage; or the likely non-renewal of a material contract.
>
> *         *         *
>
> A disclosure duty exists where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operation.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

63.    The 1989 Interpretive Release prescribes the following test to determine if disclosure under Item 303(a) is required:

> Where a trend, demand, commitment, event or uncertainty is known, management must make two assessments:
>
> (1)   Is the known trend, demand, commitment, event or uncertainty likely to come to fruition?  If management determines that it is not reasonably likely to occur, no disclosure is required.
>
> (2)   If management cannot make that determination, it must evaluate objectively the consequences of the known trend, demand, commitment, event or uncertainty, on the assumption that it will come to fruition. Disclosure is then required unless management determines that a material effect on the registrant's financial condition or results of operations is not reasonably likely to occur.

64.    As such, the SEC put the burden on issuers to rule out potential material effects or disclose and quantify, stating that if "[m]anagement is unable to determine that a material effect . . . is not reasonably likely to occur," then "MD&A disclosure of the effects of [the known trend, development or uncertainty], *quantified to the extent reasonably practicable*, would be required." 54 Fed. Reg. at 22,430; *see also* 2003 SEC Release, 68 Fed. Reg. at 75,062 ("Quantitative disclosure . . . required to the extent material if quantitative information is reasonably available."). Thus, the "required disclosure regarding the future impact of presently known trends, events or uncertainties [under Item 303] may involve some prediction or projection." 1989 SEC Release, 54 Fed.Reg. at 22,429; *see also* 2003 SEC Release, 68 Fed. Reg. at 75,059 ("In addressing prospective financial condition and operating performance, there are circumstances, particularly regarding known material trends and uncertainties, where forward-looking information is required to be disclosed.").

65.    Then in its 2003 interpretive guidance, the SEC further emphasized that "[a]s we have explained in prior guidance, disclosure of a trend, demand, commitment, event or uncertainty is required unless a company is able to conclude either that it is not reasonably likely that the trend, uncertainty or other event will occur or come to fruition, or that a material effect on the company's liquidity, capital resources or results of operations is not reasonably likely to occur." Further, the SEC advised that

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1  "companies must identify and disclose known trends, events, demands, commitments

2  and uncertainties that are reasonably likely to have a material effect on financial

3  condition or operating performance," citing the 1989 Interpretive Release as support

4  and quoting, in footnote 6, the following text of the 1989 Interpretive Release:

> MD&A mandates disclosure of specified forward-looking information,
> and specifies its own standards for disclosure – i.e., reasonably likely to
> have a material effect. The specific standard governs the circumstances
> in which Item 303 requires disclosure.

66.    Moreover, the SEC's December 29, 2003 release again emphasized the

importance of quantifying material trends and uncertainties and recognized that such

disclosures are required when quantitative information is reasonably available:

> One of the principal objectives of MD&A is to provide information about
> the quality and potential variability of a company's earnings and cash
> flow, so that readers can ascertain the likelihood that past performance is
> indicative of future performance. Ascertaining this indicative value
> depends to a significant degree on the quality of disclosure about the facts
> and circumstances surrounding known material trends and uncertainties
> in MD&A. Quantification of the material effects of known material
> trends and uncertainties can promote understanding. Quantitative
> disclosure should be considered and may be required to the extent
> material if quantitative information is reasonably available.

67.    Here, Defendants had an affirmative obligation to disclose facts in the

Offering Materials required by Item 303 of Regulation S-K, including information

regarding known trends, uncertainties, or events.  Further, Defendants were required

to quantify the anticipated material effects of known trends and uncertainties as well

as the factors that contributed to those known trends and uncertainties.

68.    In violation of Item 303, the Offering Materials failed to disclose,

contrary to Defendants' claims, that Orthofix lacked adequate internal controls and its

purported compliance and training programs and protocols were grossly deficient, all

of which resulted in: lax vetting of incoming executive hires; senior management and

directors engaging in rampant harassment and other inappropriate misconduct in

violation of the Company's purported ethical and professional standards; prioritization

of personal and financial incentives over ensuring that Orthofix and its management

complied with applicable laws, regulations, and contracts; and the Company's failure

to ensure that its SEC filings and public disclosures were free of material misstatements.

69.    At the time of the Merger, these undisclosed materially adverse events, trends, and uncertainties were known by Defendants and were already likely to (and in fact did) materially and adversely affect Orthofix's results and prospects and rendered the disclosed results and trends in the Offering Materials not indicative of Orthofix's future operating results. The Offering Materials, however, failed to disclose this required information.

### ii.    The Offering Materials Omitted Information in Violation of Item 105

70.    Item 105 of SEC Regulation S-K requires disclosure of "material" risk factors. As detailed therein, the "Risk Factor" section of the Offering Materials must "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105.[14]  As such, Item 105 requires disclosure of the most significant factors that make the offering risky or speculative and that each disclosed risk factor adequately describes the risk. "Generic or boilerplate discussions" do ***not*** suffice. SEC Release No. 33-7558, 1998 WL 425894, at *14 (July 29, 1998).

71.    In violation of Item 105's requirements, the Offering Materials failed to disclose that at the time of the Merger,  contrary to Defendants' claims, Orthofix lacked adequate internal controls and its purported compliance and training programs and protocols were grossly deficient, all of which resulted in: lax vetting of incoming executive hires; senior management and directors engaging in rampant harassment and other inappropriate misconduct in violation of the Company's purported ethical and professional standards; prioritization of personal and financial incentives over ensuring that Orthofix and its management complied with applicable laws,

---

[14] Before April 2, 2019, current Item 105 was Item 503(c).

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

regulations, and contracts; and the Company's failure to ensure that its SEC filings and public disclosures were free of material misstatements.

72.     While the Offering Materials' discussion of risk factors made incomplete reference to the mere possibility of potential, generalized risks in vague and generic terms, it did not even mention the actual material risks the Company already faced at the time of the Merger as a result of these undisclosed deficiencies, nor the likely and consequent material adverse effects on the Company's future results and prospects.

73.     Defendants' failure to disclose the material information described above, much less the materially adverse effects of the undisclosed information on the Company's reputation, results, share price, and prospects, rendered false and misleading the Registration Statement's many references to known risks that "*if*" occurring "*might*" or "*could*" affect the Company. These "risks" were already materializing at the time of the Merger.

## VI.    <u>DEFENDANTS' MISSTATEMENTS AND OMISSIONS WERE MATERIAL</u>

74.     With the foregoing and related misrepresentations and omissions in the Offering Materials and related oral communications, Defendants were able to complete the Merger. But as the truth of Defendants' misrepresentations and omissions later only gradually and partially emerged, the price of Orthofix shares suffered sharp declines.

75.     For example, on September 12, 2023, Defendants announced the appointment of an interim CEO, interim CFO, and interim CLO, effective immediately, following the "unanimous decision by the Board's independent directors to terminate for cause Keith Valentine, John Bostjancic and Patrick Keran from those respective roles." According to the press release issued that day:

> Orthofix Medical Inc. (NASDAQ: OFIX), a leading global spine and orthopedics company, today announced that Catherine Burzik, Chair of the Orthofix Board of Directors, has been appointed Interim Chief Executive Officer; Geoffrey Gillespie, Orthofix Vice President,

- 23 -
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Corporate Controller, has been appointed Interim Chief Financial Officer; and Puja Leekha, Orthofix Senior Vice President, Chief Ethics and Compliance Officer, has been appointed Interim Chief Legal Officer. ***The appointments are effective immediately and follow the unanimous decision by the Board's independent directors to terminate for cause Keith Valentine, John Bostjancic and Patrick Keran from those respective roles. The Board also requested that Mr. Valentine resign from the Board.*** The Board will immediately begin a search for permanent successors.

***The Board's decision follows an investigation conducted by independent outside legal counsel and directed and overseen by the Company's independent directors. As a result of the investigation, the Board determined that each of these executives engaged in repeated inappropriate and offensive conduct that violated multiple code of conduct requirements and was inconsistent with the Company's values and culture.*** These matters are unrelated to and do not impact the Company's strategy, results of operations or previously filed financial statements.

Catherine Burzik, Chair of the Orthofix Board, said, "***Orthofix's core values are built around fostering, cultivating and preserving a culture that is respectful, and we do not condone harassing or inappropriate conduct or statements of any kind. We require all employees - and especially our leaders - to behave in accordance with the Company's values. The Board did not make these decisions lightly. We believe they are necessary to ensure our employees, investors, customers, and other stakeholders have confidence in the Company's leaders***."

76.    On this news, the price of Orthofix shares plummeted over 30% on heavy volume to a close of $13.01 per share on September 13, 2023.

77.    Then, on March 5, 2024, with the filing of its Annual Report on Form 10-K with the SEC, Orthofix admitted as follows:

In connection with the preparation and filing of this Annual Report, the Company's management, including our President and Chief Executive Officer and our Chief Financial Officer, conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2023, based on the framework set forth in "Internal Control—Integrated Framework (2013)" issued by the Committee of

- 24 -

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Sponsoring Organizations of the Treadway Commission (the COSO criteria). Based on its evaluation, the Company's management *concluded that our internal control over financial reporting was not effective* as of December 31, 2023, *due to a material weakness in the design and operation of certain management review controls pertaining to business combinations* and assessing recoverability of goodwill, resulting from *insufficient evidence supporting the precision over the determination of certain estimates* and *insufficient evidence supporting the operating effectiveness of the associated review controls*. . . .

As permitted by the SEC Staff interpretive guidance for recently acquired businesses, management's assessment and conclusion on the effectiveness of the Company's disclosure controls and procedures as of December 31, 2023, *excludes an assessment of the internal control over financial reporting of the SeaSpine business* acquired on January 5, 2023. SeaSpine represents approximately 52% of consolidated total assets and approximately 35% of consolidated revenues as of and for the year ended December 31, 2023.

78.    Orthofix also disclosed that "Ernst & Young LLP, an independent registered public accounting firm, ha[d] issued an audit report on the effectiveness of our internal control over financial reporting as of December 31, 2023," which report stated as follows:

We have audited Orthofix Medical Inc.'s internal control over financial reporting as of December 31, 2023, based on criteria established in Internal Control—Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework) (the COSO criteria). In our opinion, because of the effect of the material weakness described below on the achievement of the objectives of the control criteria, *Orthofix Medical Inc. (the Company) has not maintained effective internal control over financial reporting as of December 31, 2023, based on the COSO criteria.*

79.    By the commencement of this action, Orthofix shares have traded below $10 per share, an *over 50% decline* from the approximately $22.76 amount paid per share in the Merger exchange.  Plaintiff and similarly situated former SeaSpine investors suffered severe losses as a result.

- 25 -
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

## VII.   <u>INAPPLICABILITY OF THE PSLRA SAFE HARBOR</u>

80.     The PSLRA's statutory safe harbor applicable to forward-looking statements under certain circumstances does not apply to any of the false or misleading statements or omissions pleaded in this Complaint. The safe harbor applies to affirmative statements; it does not apply to omissions of already existing material facts. Moreover, the affirmative statements complained of herein were: (i) historical statements or statements of purportedly current facts and conditions at the time the statements were made; (ii) mixed statements of present and/or historical facts and future plans; and/or (iii) omitted to state material current or historical facts necessary to make the statements not misleading.

81.     Further, to the extent that any of the false or misleading affirmative statements alleged herein could be construed as forward-looking, the statements were not accompanied by any meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the statements. Given the then-existing facts contradicting the Defendants' statements, Defendants' generalized risk disclosures were not sufficient to insulate them from liability for their materially false and misleading statements.

82.     Alternatively, to the extent the statutory safe harbor otherwise would apply to any forward-looking affirmative statements pleaded herein, the Defendants are liable for those false and misleading forward-looking statements because at the time each of those statements was made, the speaker knew the statement was false or misleading, did not actually believe the statements, had no reasonable basis for the statements, and were aware of undisclosed facts tending to seriously undermine the statements' accuracy.

## VIII.  <u>CLASS ACTION ALLEGATIONS</u>

83.     Plaintiff brings this putative class action on behalf of all former SeaSpine shareholders who acquired newly issued Orthofix common stock in exchange for SeaSpine share pursuant to Offering Materials issued in connection with the Merger

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

(the "Class").  Excluded from the Class are defendants and their families, the officers and directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

84.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Orthofix or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

85.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

86.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

87.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether defendants violated the Securities Act;

(b)    whether the Registration Statement were negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

88.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION
### For Violation of §11 of the Securities Act
### Against All Defendants

89.    Plaintiff incorporates all the foregoing by reference.

90.    This Cause of Action is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

91.    This Cause of Action alleges and sounds in strict liability and negligence. It expressly excludes and disclaims any allegation that could be construed as alleging fraud or scienter, as it is solely based on claims of strict liability and/or negligence under the Securities Act.

92.    The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

93.    Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

94.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

95.    By reason of the conduct alleged herein, each defendant violated, or controlled an employee or other agent who violated, §11 of the Securities Act.

96.    Plaintiff acquired Orthofix shares directly in the Merger exchange pursuant to the Registration Statement.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

97.    Plaintiff and the Class have sustained damages.  The value of Orthofix common stock has declined substantially subsequent to and due to Defendants' violations.

98.    At the time of their acquisition of Orthofix shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action.  Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered and the time Plaintiff commenced this action.

## SECOND CAUSE OF ACTION
### For Violation of §12(a)(2) of the Securities Act
### Against All Defendants

99.    Plaintiff incorporates all the foregoing by reference.

100.    By means of the defective prospectus and related oral communications, Defendants promoted, solicited, and sold Orthofix shares to Plaintiff and other members of the Class.

101.    This Cause of Action alleges and sounds in strict liability and negligence. It expressly excludes and disclaims any allegation that could be construed as alleging fraud or scienter, as it is solely based on claims of strict liability and/or negligence under the Securities Act.

102.    The prospectus and related oral communications contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants owed Plaintiff and the other members of the Class who acquired Orthofix shares pursuant to the Merger exchange the duty to make a reasonable and diligent investigation of the statements contained in the prospectus to ensure that such statements were true and that there was no omission of a material fact

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the prospectus and related oral communications as set forth above.

103.   By means of the prospectus and related oral communications, Defendants promoted, solicited, and sold Orthofix shares to Plaintiff and Class members. Defendants were sellers to and direct solicitors of purchasers of the Company's securities offered pursuant to the Merger exchange. Defendants issued, caused to be issued, or signed or authorized the signing of the prospectus in connection with the offering, and used it to directly induce investors, including Plaintiff and the other Class members, to purchase the Company's shares.

104.   Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the prospectus at the time he acquired Orthofix shares.

105.   By reason of the conduct alleged herein, defendants violated §12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, Plaintiff and the other members of the Class who acquired Orthofix shares pursuant to the Merger exchange sustained substantial damages in connection with their purchases of the stock.  Accordingly, Plaintiff and the other members of the Class who hold the common stock issued pursuant to the prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock to Defendants sued herein.  Class members who have sold their common stock seek damages to the extent permitted by law.

### THIRD CAUSE OF ACTION
**For Violation of §15 of the Securities Act**
**Against All Defendants**

106.   Plaintiff incorporates all the foregoing by reference.

107.   This Cause of Action is brought pursuant to §15 of the Securities Act against the defendants.

108.   This Cause of Action alleges and sounds in strict liability and negligence. It expressly excludes and disclaims any allegation that could be construed as alleging fraud or scienter, as it is solely based on claims of strict liability and/or negligence under the Securities Act.

109.   Orthofix controlled its employee officers and directors named as Individual Defendants. The Individual Defendants were controlling persons of Orthofix, as well as certain employees of Orthofix and/or SeaSpine, by virtue of their positions as directors or senior officers of Orthofix and SeaSpine. Specifically, the Individual Defendants participated at all relevant times in the operation and management of Orthofix, and conducted and participated, directly and indirectly, in the conduct of Orthofix's business affairs. As directors and officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Orthofix. Because of their positions of control and authority as directors and officers of Orthofix, the Individual Defendants were able to, and did, control the contents of the Offering Materials and related oral communications, which contained materially untrue information and omissions. The Individual Defendants each had a series of direct or indirect business or personal relationships with other directors or officers or major shareholders of Orthofix and SeaSpine. The Company controlled the Individual Defendants and all Orthofix employees.

110.   Orthofix and the Individual Defendants were each a culpable participant in the violations of §§11 and 12(a)(2) of the Securities Act alleged in the First and Second Causes of Action above, based on their having signed or authorized the signing of the Offering Materials, having solicited Plaintiff and other Class members, and having otherwise participated in the process which allowed the Merger exchange to be successfully completed.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1

## **PRAYER FOR RELIEF**

2        WHEREFORE, Plaintiff prays for relief and judgment, as follows:

3        A.    Certifying this as a class action, appointing Plaintiff as a Class

4    representative, and appointing Plaintiff's counsel as Class Counsel;

5        B.    Awarding damages in favor of Plaintiff and the Class against all

6    Defendants, jointly and severally, in an amount to be proven at trial, including interest

7    thereon;

8        C.    Awarding Plaintiff and the Class their reasonable costs and expenses

9    incurred in this action, including counsel fees and expert fees; and

10       D.    Awarding rescission, disgorgement, or such other equitable or injunctive

11   relief as deemed appropriate by the Court.

12

## **JURY DEMAND**

13       Plaintiff hereby demands a jury trial on all issues so triable.

14

15    DATED:  September 6, 2024            Respectfully submitted,

16

17                                        /s/ Adam E. Polk

18                                        ADAM E. POLK (SBN 273000)
                                          apolk@girardsharp.com
19                                        **GIRARD SHARP LLP**
                                          601 California Street, Suite 1400
20                                        San Francisco, CA 94108
                                          Telephone: (415) 981-4800
21                                        Facsimile: (415) 981-4846

22                                        DAVID W. HALL (SBN 274921)
                                          dhall@hallfirmltd.com
23                                        **THE HALL FIRM, LTD.**
                                          Four Embarcadero Center, Suite 1400
24                                        San Francisco, CA  94104
                                          Telephone: (415) 766-3534
25                                        Facsimile: (415) 402-0058

26
                                          *Attorneys for Plaintiff and the Putative*
27                                        *Class*

28

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Tommy O'Hara, certify as to the claims asserted under the federal securities laws, that:

1.      I have reviewed the Complaint against Orthofix Medical Inc. ("Orthofix" or the "Company") and authorize its filing.

2.      I did not purchase or acquire Orthofix securities at the direction of counsel or to participate in any private action arising under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of a Class of investors, including providing testimony at deposition and trial, if necessary.

4.      I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet ("Schedule A") lists all of my transactions in Orthofix securities that are the subject of the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the Class beyond my pro rata share of any recovery, except as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct this day of __9/6/2024__ .

DocuSigned by:

*Tom O'Hara*

0B5B092F47B945E...

Tommy O'Hara

## **SCHEDULE A**

### **SECURITIES TRANSACTIONS**

**Orthofix Medical Inc.**

| DATE | SYMBOL | TRANSACTION TYPE | SHARES | PRICE |
|------|--------|------------------|--------|-------|
| 2023-01-06 | SPNE to OFIX | PURCHASE/MERGER EXCHANGE | 1,023 | * |
| 2024-07-25 | OFIX | SALE | 167.769 | $16.7150 |
| 2024-07-25 | OFIX | SALE | 855.231 | $16.7004 |

\* Pursuant to the merger, each share of SeaSpine common stock was exchanged for 0.4163 shares of Orthofix common stock.